IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

AUTOMOTIVE LEASING
CORPORATION a Missouri
corporation, on behalf of itself and all
others similarly situated, et al.,

    Plaintiffs,

     v.

                                 CIVIL ACTION FILE
                                 NO. 1:12-CV-2048-TWT

MAHINDRA & MAHINDRA, LTD.,

    Defendant.

## OPINION AND ORDER

The Plaintiffs move to certify a class of all motor vehicle dealers who agreed to distribute the Defendant's vehicles in the United States before the Defendant announced it would not be entering the United States' market. The Plaintiffs seek to recover the fees they paid to the Defendant for the right to distribute its cars in the domestic market. Because the Plaintiffs' dealings with the Defendant and its United States distributor varied greatly, class certification is not appropriate.

## I.  Background

The Plaintiffs and putative class members paid "appointment" fees to Defendant Mahindra & Mahindra, Ltd., through its distributor, Global Vehicles, Inc., to obtain

the rights to distribute Mahindra-made vehicles in the United States. Mahindra began marketing its light trucks and SUVs for entrance into the United States' market in 2006 and collected approximately $32 million in fees from approximately 340 dealers. According to the Plaintiffs, Mahindra promised to begin delivering the vehicles in 2009. In June 2010, however, Mahindra announced it would not be entering the United States' market and terminated the agreements. Mahindra and Global did not refund all of the fees that Global collected from the Plaintiffs.

The Plaintiffs seek to certify a class in order to seek restitution and damages for all dealers that paid appointment fees to Mahindra. Although their complaint includes six substantive counts, the Plaintiffs only seek certification for four counts: (1) violation of the Georgia Motor Vehicle Franchise Practices Act (the "Georgia Dealers' Day in Court Act"); (2) violation of the Automobile Dealers Day in Court Act; (3) unjust enrichment; and (4) promissory estoppel. They do not seek to certify a class for their claims for intentional misrepresentation and negligent representation. The Plaintiffs propose to define a class as:

> Any and all individuals and/or entities that paid money to Global and/or Mahindra for the right to sell and market vehicles, products, and accessories manufactured by Mahindra & Mahindra, Ltd. in the United States.

(Pls.' Mot. for Class Certification, at 2). The Plaintiffs argue that their proposed class meets the requirements of Rule 23(a) and Rule 23(b)(3). The Defendant contends that

the proposed class does not meet the superiority and predominance requirements of Rule 23(b)(3).

## II.  Class Certification Standard

To maintain a case as a class action, the party seeking class certification must satisfy each of the prerequisites of Rule 23(a) and at least one of the provisions of Rule 23(b). Klay v. Humana, Inc., 382 F.3d 1241, 1250 (11th Cir. 2004). Rule 23(a) sets forth the four prerequisites to maintain any claim as a class action:

> [o]ne or more members of a class may sue or be sued as representative parties on behalf of all members only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These prerequisites are commonly referred to as (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.  Cooper v. Southern Co., 390 F.3d 695, 711 n.6 (11th Cir. 2004). Failure to establish any one of the four factors precludes certification. In addition, under Rule 23(b), the Plaintiffs must convince the Court that: (1) prosecuting separate actions by or against individual members of the class would create a risk of prejudice to the party opposing the class or to those members of the class not parties to the subject litigation; (2) the party opposing the class has refused to act on grounds that apply generally to the class,

necessitating final injunctive or declaratory relief; or (3) questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b). The party seeking class certification bears the burden of proving that the requirements of 23(a) and one of the requirements of 23(b) are satisfied. General Tel. Co. of the Sw. v. Falcon, 457 U.S. 147, 161 (1982); Valley Drug Co. v. Geneva Pharms., Inc., 350 F.3d 1181, 1187 (11th Cir. 2003).

The decision to grant or deny class certification lies within the sound discretion of the district court. Klay, 382 F.3d at 1251; Armstrong v. Martin Marietta Corp., 138 F.3d 1374, 1386 (11th Cir. 1998) (en banc). The Court must perform a "rigorous analysis" of the particular facts and arguments asserted in support of class certification. Falcon, 457 U.S. at 161; Gilchrist v. Bolger, 733 F.2d 1551, 1555 (11th Cir. 1984). Frequently,  that "rigorous analysis" will entail some overlap with the merits of the plaintiff's underlying claim.  Wal-Mart Stores, Inc. v. Dukes,  __ U. S. __, 131 S.Ct. 2541, 2552 (2011).


### III.  Discussion

#### A.     Rule 23(a)

To warrant class certification, the Plaintiffs must satisfy all four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b).  Rule 23(a) provides that:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).   These requirements are referred to as "numerosity," "commonality," "typicality," and "adequacy."

This proposed class is sufficiently numerous. The Plaintiffs state that the class consists of 340 individuals and entities who dealt with the Defendant.  "[W]hile there is no fixed numerosity rule, generally less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors." Cox v. American Cast Iron Pipe Co., 784 F.2d 1546, 1553 (11th Cir. 1986) (internal quotations omitted). The Plaintiffs have accordingly demonstrated that the proposed class satisfies the numerosity requirements of Rule 23(a).

However, the Plaintiffs have not demonstrated that the class satisfies the commonality requirement of Rule 23(a)(2). The Plaintiffs contend that a certified class is capable of generating common answers to the common questions of whether

Mahindra exerted sufficient control over Global and whether the fees the class paid were transferred to Mahindra. Further, they claim that their equity-based Georgia law claims are also capable of generating common answers because the dealership agreements that each Plaintiff signed required the application of Georgia law.

As noted, the Plaintiffs seek to certify a class for their claims for: (1) violation of the Georgia Motor Vehicle Franchise Practices Act; (2) violation of the federal Automobile Dealers Day in Court Act; (3) unjust enrichment; and (4) promissory estoppel. The claims for unjust enrichment and promissory estoppel and the claims under the Georgia Dealers' Day in Court Act anticipate the application of Georgia state law to all class members. However, the Plaintiffs have not shown that Georgia law would necessarily apply to all of the putative class members' state law claims.

The Plaintiffs rely on the declaration of John Perez, the former CEO of Global, to support their assertion that Georgia law applies. Perez states that Global provided all prospective dealers with an initial dealer application package and a subsequent Dealer Sales and Service Agreement ("DSSA") package. Perez believes the agreements were the same for all prospective dealers and all were expressly governed by the laws of Georgia. (Perez Decl. ¶¶ 10, 11). The initial application packages consisted of a dealer application, a statement of corporate organization, a dealership plot plan, a profile sheet, a labor rate form, a financial statement, a customer

satisfaction report, and letters of understanding and intent. (Perez Decl. Ex. B). Of these, only the letter of intent addresses choice of law and dispute resolution. It states that "the laws of the State of Georgia shall govern the validity of this LOI [Letter of Intent]. Furthermore, Dealer agrees that any disputes arising out of this LOI shall first be submitted to mediation in Georgia. If unresolved through mediation, it will be arbitrated in Georgia." (Perez Decl. Ex. B, at 13). Here, the Plaintiffs are not seeking to determine the validity of the letters of intent. There is no indication that the language in the letters of intent was meant to extend to subsequent litigation between the dealers and Mahindra. Accordingly, nothing in the application packages shows that Georgia law applies to the putative class's state law claims.

The DSSAs, which were provided to dealers upon Mahindra's approval, also had a provision addressing choice of law. (See Perez Decl. ¶ 10). The provision states that:

> This Agreement is to be governed and construed according to the laws of the State of Georgia. It is understood, however, that it is a general form of Agreement designed for use in any State. Therefore, if any provision in this Agreement contravenes the laws and regulations of any state or other jurisdiction wherein this Agreement is to be performed, or denies access to the procedures, forums, or remedies provided for by such laws or regulations, such provisions shall be deemed to be modified to conform to such laws and regulations, and all other terms and provisions of this Agreement shall remain in full force.

(Sec. Am. Compl. Ex. B, at 6). The plain language of this passage does not have the reach that the Plaintiffs contend. The choice of law provision only states that the DSSAs themselves are to be governed and construed according to Georgia law, not that any disputes arising from the payment of prospective franchise fees from the dealers to Mahindra will be governed by Georgia law. See Cooper v. Meridian Yachts, Ltd., 575 F.3d 1151, 1162 (11th Cir. 2009) (quoting Green Leaf Nursery v. E.I. DuPont De Nemours & Co., 341 F.3d 1292, 1300 (11th Cir. 2003)) ("a provision providing that '[t]his release shall be governed and construed in accordance with the laws of the State of [X],' will be construed narrowly as it only purports to govern the agreement itself and does not refer 'to any and all claims or disputes arising out of the' agreement"). Even if the provision supports the application of Georgia law to the Georgia Dealers' Day in Court Act claims, the passage does not support the application of Georgia law to the Plaintiffs' state law claims for equitable relief.

Indeed, the determinations of which law to apply to class members' claims for unjust enrichment and promissory estoppel would require individualized choice of law analyses, including due process analyses. See Brenner v. Future Graphics, LLC, 258 F.R.D. 561, 571 (N.D. Ga. 2007). Under Georgia's choice of law rules, when an injury is suffered out of state but no statute in that state is implicated, Georgia law applies to the claim provided that its application is consistent with due process. To determine

whether application of Georgia law to class members is consistent with due process, "the court must analyze whether the State of Georgia has 'significant contact or significant aggregation of contacts to the claims asserted by each member of the plaintiff class, contacts creating state interests, in order to ensure that the choice of Georgia law is not arbitrary or unfair.'" (quoting Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 821-22 (1985)). Seven of the eight named Plaintiffs testified that they have not operated in the State of Georgia or even planned to conduct business in Georgia. (See Premier Dep. at 92; Automotive Leasing Corporation Dep. at 35-36; Ruge's Automotive Dep. at 24-25; Luke Fria Dep. at 13; Duebbert Dep. at 50-52; South Main Motors Dep. at 15; Wetzel Dep. at 37-38). Likewise, the Defendant's dealings with the Plaintiffs, including marketing presentations and meetings, occurred at different places across the country for different Plaintiffs at different times. Thus, the Court would have to conduct differing due process analyses for many of the approximately 340 potential class members. Because the Plaintiffs have not shown that Georgia law would necessarily apply to all of the putative class members' claims for equitable relief, the class does not satisfy commonality for those claims.

Even though choice of law issues do not affect the Plaintiffs' claims under the Federal Dealers' Day in Court Act, and even assuming the Plaintiffs had established that all class members could bring claims under the Georgia Dealers' Day in Court

Act, the variety of agreements signed by class members is itself enough to defeat commonality. Many class members did not in fact sign DSSAs. (See Def.'s Response in Opp'n to Pls.' Mot. for Class Certification Ex. 34). Indeed, the 340 potential class members signed a myriad of additional documents ranging from letters of intent to informational memoranda to background authorizations. Not every class member signed every agreement, and several only signed one agreement. (See id.) There were at least five different versions of informational memoranda that class members signed. (See Def.'s Response in Opp'n to Pls.' Mot. for Class Certification Exs. 4, 14, 15, 16, 17). Additionally, potential class members in some states were unable to enter into agreements concerning Mahindra vehicles before Mahindra's vehicles were certified in the United States. (See Def.'s Response in Opp'n to Pls.' Mot. for Class Certification Ex. 20). Some dealers did not sign agreements until 2010, well after Mahindra promised to deliver vehicles to dealers who signed earlier agreements. (See Fruia Dep. at 51). Given the varying circumstances of many potential class members, the Court concludes that the Plaintiffs have not demonstrated that the proposed class meets commonality requirement of Rule 23(a)(2). Accordingly, the Plaintiffs' motion for class certification should be denied.[1]

_____

[1] Because the Court concludes that the Plaintiffs cannot satisfy the requirements of Rule 23(a)(2), it will not address the typicality and adequacy elements of Rule 23(a)(3) and (4).

**B.      Rule 23(b)(3)**

Even if the Plaintiffs could establish commonality among all potential class members, the class should still not be certified because it fails to satisfy the predominance and superiority requirements of Rule 23(b)(3).[1] Pursuant to Rule 23(b)(3), the Court considers: (1) whether issues of law or fact common to members of the class predominate over questions affecting only individual members; and (2) whether a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Fed. R. Civ. P. 23(b)(3).

To establish predominance, it is not necessary to show that all questions of law or fact be common.  Nevertheless, "the issues in the class action that are subject to generalized proof and thus applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof." Cooper v. Southern Co., 390 F.3d 695, 722 (11th Cir. 2004). Critically, "[w]hether an issue predominates can only be determined after considering what value the resolution of the class-wide issue will have in each class member's underlying cause of action." Klay, 382 F.3d at 1255. "Where, after adjudication of the classwide issues, plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to

---

[1] The Plaintiffs do not argue that their proposed class should be certified under either Rule 23(b)(1) or 23(b)(2).

establish most or all of the elements of their individual claims, such claims are not suitable for class certification under Rule 23(b)(3)." Id.

Here, for many of the same reasons discussed in the Court's Rule 23(a) analysis, the Plaintiffs have not shown that issues of law or fact common to the class predominate. As noted, even assuming that each absent class member is bound by the DSSA selection of Georgia law to govern the DSSA, the state law applicable to each members' common law claims for unjust enrichment and promissory estoppel would require individualized due process determinations. This is enough to show that common issues of law do not predominate for those claims. See In re Conagra Peanut Butter Products Liability Litig., 251 F.R.D. 689, 696-98 (N.D. Ga. 2008) (declining to certify class for unjust enrichment claims due to potential issues in determining individual choice of law). Likewise, various factual issues such as potential class members' prior relationships with Global, the dates in which class members formed their relationships with Global and Mahindra, and the specific agreements signed by class members require individual determinations rather than classwide determinations. These points alone indicate that issues of law and fact do not predominate.

Further, the class members seek to recover varying amounts that were paid at different times and, in some cases, initially paid for the right to distribute Cross Lander vehicles. These facts undermine the Court's ability to resolve the question of

damages on a classwide basis. See Comcast Corp. v. Behrend, 133 S. Ct. 1426, 1433 (2013) (reversing class certification under Rule 23(b)(3) because the respondent had not shown that "damages are capable of measurement on a classwide basis."). Several potential class members are seeking to recover money given to Global's predecessor for rights to sell vehicles made by a Romanian company known as Cross Lander. (See Premier Dep. at 20-21; South Main Motors Dep. at 25-28). Plaintiff Premier Motors entered into an agreement with Global concerning Cross Lander vehicles in 2004. (Premier Dep. at 20). Plaintiff South Main Motors paid a fee for the distribution of Cross Lander vehicles in 2002 or 2003, and then Global credited the fee paid for Cross Lander vehicles for South Main Motors' investment in Mahindra vehicles. (South Main Motors Dep. at 25-26, 36-37). The fact that some dealers paid initial fees to Global for the import of different vehicles undermines the commonality of the proposed class. According to the Plaintiffs, 100 of the 340 class members had relationships with Global through Cross Lander before forming relationships with Mahindra (See Perez Decl. ¶ 12). Next, some class members received refunds from Global before Mahindra terminated the DSSAs. (Perez Dep. at 175-76). At least one potential class member requested refunds in multiple written communications. (See Def.'s Response in Opp'n to Pls.' Mot. for Class Certification Ex. 29). Indeed, the

Defendant has shown that at least seven dealers were given refunds by Global as early as 2007, before Mahindra terminated the agreements. (<u>Id.</u> Ex. 30).

Likewise, the amount of the appointment fees that the Plaintiffs seek to recover varies considerably. (<u>See</u> Talley Decl. Ex. B, at ¶ 3 ($59,000); Ex. C, at ¶ 4 ($150,000); Ex. D, at ¶ 5 ($195,000); Ex. E, at ¶ 3 ($195,000); Ex. F, at ¶ 3 ($125,000)). Additionally, some class members may seek refunds for investments in upgrading their dealerships. (<u>See</u> Sec. Am. Compl. ¶ 122 (seeking to recover, under the Georgia Dealers' Day in Court Act, the Plaintiffs' "actual monetary loss")). One named Plaintiff contends he spent $3,000 preparing his dealership for Mahindra vehicles and another estimates he spent at least $25,000 purchasing signage and arranging for a showroom. (<u>See</u> Talley Decl. Ex. B, at ¶ 4; Ex. E, at ¶ 4). The need for individualized assessments of damages counsels against class certification under Rule 23(b)(3). <u>In re Conagra</u>, 251 F.R.D. at 698 (citing <u>Klay</u>, 382 F.3d at 1260); <u>Comcast</u>, 133 S. Ct. at 1426, 1433. The Court is not persuaded that class damages against Mahindra may be calculated simply by adding up the fees paid by the Plaintiffs. The Court accordingly concludes that common issues of law and fact do not predominate. Because the Plaintiffs cannot show that common issues of law and fact predominate the proposed class, the Plaintiffs have not satisfied Rule 23(b)(3), and the Plaintiffs' motion for class certification should be denied.

## IV.  Conclusion

For the reasons set forth above, the Plaintiffs' Motion for Class Certification [Doc. 52] is DENIED. The Defendant's Motion for Oral Argument [Doc. 70] is DENIED as moot.

SO ORDERED, this __14__ day of March, 2014.

/s/Thomas W. Thrash_____
THOMAS W. THRASH, JR.
United States District Judge